**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| KRISTINA MCLELAN, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SUPPORT PETS LLC,<br><br>　　　　Defendant. | Case No.<br><br><br>**CLASS ACTION**<br><br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff Kristina Mclelan ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her counsel, brings this Class Action Complaint against Defendant Support Pets, LLC ("Support Pets" or "Defendant"), and alleges upon personal knowledge individually, and upon information and belief as to all other matters:

## INTRODUCTION

1.　　Defendant Support Pets, LLC ("Support Pets" or "Defendant") represented to pet owners that Support Pets products grant owners legal permission to take their pets almost anywhere. It lied.

2.　　Many people with disabilities require service animals, which is defined by the ADA as a "dog that has been individually trained to do work or perform tasks for an individual with a disability."[1] Entities that provide goods or services to the public must provide reasonable modifications to accommodate people with disabilities, and thus "no pets" policies generally are inapplicable to service animals.[2]

---

[1] *Frequently Asked Questions about Service Animals and the ADA*, ADA, https://www.ada.gov/resources/service-animals-faqs/ (last visited July 9, 2026).
[2] *Id.*

1

3.      Service animals are not merely animals that "provide[] comfort" to their owner.[3] Emotional support, therapy, comfort, and companion animals do not qualify as service animals.[4] Thus, emotional support animals are not provided the same protections against "no pets" policies that service animals are provided.[5]

4.      Defendant Support Pets, LLC is a Florida-based company that operates Support Pets, a pet product business that markets and sells purported Official ESA products to consumers throughout the United States. Defendant represents that Support Pets provides Official ESA and PSD documentation to consumers seeking accommodations or permissions for their pets.

5.      Defendant intentionally makes its documentation appear official. It registered the trademark Official ESA®, making customers believe that Defendant can provide official documentation that permit pet owners without disabilities to exempt their pets from "no pets" policies.[6]

6.      Defendant's secret is this—Defendant's products provide *no* such special permissions.

7.      These representations conveyed to Plaintiff and Class Members that purchasing Support Pets' products granted them permission to keep their pets places that their pets would be otherwise prohibited from entering and staying. Plaintiff and Class Members' understanding was reasonable. Defendant meant for Plaintiff and Class Members to believe its representation so that Plaintiff and Class Members would purchase Defendant's products.

8.      Plaintiff purchased Defendant's products in reliance on Defendant's representations that Support Pets would allow her to take her pet places that had "no pet" policies.

---

[3] *Id.*
[4] *Id.*
[5] *Id*.
[6] *Id*.

9.     Plaintiff and Class Members would not have purchased Defendant's products, or would not have paid the prices charged for those products, had they known Defendant's representations regarding Support Pets' products were false or misleading.

10.     Plaintiff brings this action individually and on behalf of the proposed Nationwide Class defined herein for negligent misrepresentation, fraudulent misrepresentation, breach of express warranty, and unjust enrichment.

**PARTIES**

**Plaintiff Kristina Mclelan**

11.     Plaintiff Kristina Mclelan is a citizen of the State of California and resides in Fresno County, California. In approximately 2023, Plaintiff purchased an Emotional Support Animal ("ESA") identification card and certificate from Defendant after reviewing Defendant's advertising and representations concerning its Official ESA® products. Plaintiff paid approximately $125 for the products.

12.     Plaintiff purchased Defendant's ESA products because she understood, based on Defendant's representations, that the products and accompanying documentation would provide legally recognized accommodations for her emotional support animal and would enable her to keep her dog in housing notwithstanding her landlord's pet restrictions. Plaintiff purchased the products specifically so that she could satisfy her landlord's requirements and continue living with her dog.

13.     Had Plaintiff known that Defendant's products and documentation did not provide the legal rights, permissions, or official status represented by Defendant, she would not have purchased the products, or would have paid substantially less for them.

**Defendant Support Pets, LLC**

14.     Defendant Support Pets, LLC is a Florida limited liability company with its principal place of business located at 78 SW 7th Street 8142 Miami, FL 33130. Defendant operates the Support Pets brand and markets, advertises, and sells purported "no pets" policy exemption products throughout the United States.

15.     On information and belief, Defendant's members are citizens of Florida. Defendant's CEO and Founder (and registered authorized representative), Andrew Lermsider, resides in Miami, Florida. Nicole Hedmark, Defendant's Director and Vice President of Operations, also resides in Miami, Florida. Steven Biggs, Defendant's Chief of Staff, resides in Jacksonville, Florida.

16.     The address of Defendant's registered agent, Corporate Creations Network, Inc., is 801 US Highway 1 North Palm Beach, FL 33408 US.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), there are in excess of 100 Class Members, the action is a class action in which one or more Class Members are citizens of states different from Defendant, and Defendant is not a government entity.

18.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business in this District, has its corporate headquarters located in this District, is subject to personal jurisdiction in this District, and is deemed to be a citizen of this District. Additionally, Support Pets advertises in this District and has received substantial revenue

and profits from selling products in this District; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this District.

19.     The Court has personal jurisdiction over Defendant because Defendant is headquartered in this District, maintains its principal office in Miami, Florida, regularly conducts and transacts business in this District, and directed the conduct alleged herein from this District.

## FACTUAL ALLEGATIONS

20.     Support Pets LLC operates Support Pets, a pet products seller that markets and sells purported "no pets" policy exemption products through the website supportpets.com.

21.     Through Support Pets' website, advertising, and marketing materials, Defendant represents that its products help protect their pets from rules prohibiting pet entry with Official ESA® documentation.[7]

22.     Through Support Pets, Defendant advertises that by purchasing its products, pet owners have an easier time bringing their "pet to stores, restaurants, hotels, ride shares & more."

23.     Defendant advertises that its products grant permissions to pet owners to live with their pets and bring their pets anywhere, even when a business or entity otherwise has a "no pets" policy.[8]

24.     Defendant tells owners that its products will save them money by eliminating costly pet deposits and fees.[9]

25.     Lastly, Defendant assures pet owners that "when you need them most, have [your pets] by your side, always."[10]

---

[7] *See Support Pets*, Support Pets https://www.supportpets.com/#landing_page_homepage (last visited July 9, 2026).
[8] *Id.*
[9] *Id.*
[10] *Id.*



26.     Defendant assures its customers that they will instantly obtain "pre-approval" through using Defendant's website.[11] Customers can then order Support Pets products purporting to exempt customers from "no pets" policies. Once customers order their products, Support Pets will grant customers "approval from a board certified medical doctor in 48 hours in your state".[12]



27.     But even with Official ESA documentation, pet owners may be prohibited from taking their pets onto aircraft cabins.[13]

---

[11] *Id*.

[12] *Id*.

[13] US Service Animal Registrar, *The 2021 DOT Rule on ESAs and Air Travel: What Changed and Why*, https://usserviceanimalregistrar.org/esa-acaa-2021-rule-

28.     Pet owners may be prohibited from taking their pets into businesses. The ADA does not require businesses that have "no pet" policies to permit Official ESA documented pets to enter their premises.[14]

29.     Plaintiff and Class Members purchased Defendant's products based upon their belief that by purchasing Support Pets' products, Plaintiff and Class Members would receive permissions to take their pets anywhere. They reasonably believed that Defendant could and would provide documentation and products that the company represented that it could and would provide.[15]

30.     Plaintiff and Class Members would not have purchased Defendant Support Pets' products or would not have paid the prices charged for those products, had they known that Defendant's representations regarding Support Pets' products were false or misleading. Plaintiff and Class Members would not have purchased the Defendant's products had they known that they would not receive the ability to bring their pets anywhere, even to places with a "no pets" policy.

31.     Plaintiff and Class Members suffered economic injury as a result of Defendant's misrepresentations.

## CLASS ACTION ALLEGATIONS

32.     Pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff seek certification of a nationwide class as defined below:

> **Nationwide Class**
> All persons residing in the United States who purchased products from Defendant through Support Pets during the applicable limitations period.

---

explained/?srsltid=AfmBOopVWjE560HOIrkDDSmsVRa7U__HZC1QZD8Q2_OMOajZNl4OTw5K (last accessed July 9, 2026).

[14] *Frequently Asked Questions about Service Animals and the ADA*, ADA, https://www.ada.gov/resources/service-animals-faqs/ (last visited July 9, 2026).

[15] *Id.*

33. In addition, or in the alternative to the nationwide class, Plaintiff seeks to represent each of the following state-wide classes:

**California Subclass**
All persons residing in the State of California who purchased products from Defendant through Support Pets during the applicable limitations period.

34. The Nationwide Class and California Subclass are collectively referred to as the "Class." Excluded from the Class are Defendant, Defendant's affiliates, officers and directors, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the class definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

35. **Numerosity**: The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Support Pets and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that many thousands of Support Pets products have been sold nationwide.

36. **Existence/Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

    a. whether Support Pets engaged in the conduct alleged herein;

    b. whether Support Pets misrepresented the nature of its Official ESA products

    c. whether Support Pets breached express and implied warranties;

    d. whether Support Pets' conduct alleged herein violates laws as asserted herein;

e.  whether Plaintiff and Class Members overpaid for products in light of Support Pets' representations

f.  whether Plaintiff and Class Members have suffered an ascertainable loss;

g.  whether Plaintiff and Class Members are entitled to damages, including punitive damages, as a result of Support Pets' conduct alleged herein, and if so, the amount or proper measure of those damages; and

h.  whether Plaintiff and Class Members are entitled to equitable relief, including but not limited to restitution and/or injunctive relief.

37.  **Typicality**: Plaintiff's claims are typical of the claims of the Class since the Plaintiff purchased products from Defendant, as did each Class Member. Plaintiff and Class Members were injured in the same manner by Support Pets' uniform course of conduct alleged herein. Plaintiff and all Class Members have the same claims against Support Pets relating to the uniform conduct alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class Members. Plaintiff and all Class Members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Support Pets' wrongful conduct in misrepresenting its products to customers. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

38.  **Adequacy**: Plaintiff is an adequate representative for the Class because her interests do not conflict with the interests of the Class that she seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex class action litigation—including consumer class action cases—and counsel intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and experienced counsel.

39.  **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and Class Members. The injury suffered by each

9

individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Support Pets' conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them by Support Pets. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, Members of the Class can be readily identified and notified based upon, inter alia, the records (including receipts, communications, and internal databases) that Support Pets maintains regarding its customers and the sales of its products.

40.     Support Pets has acted on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENT MISREPRESENTATION
**(On behalf of Plaintiff and the Nationwide Class)**

41.     Plaintiff incorporates by reference paragraphs 1-40 as though fully set forth at length herein.

42.     Support Pets advertised to Plaintiff and Class Members that its products made it easier to bring their pets anywhere. Support Pets advertised that its ESA products granted pet owners special permission to take their pets anywhere. Support Pets knew its products could not provide the permissions that it represented it could provide.

43.     Plaintiff and Class Members relied on these representations.

44.     Support Pets contracted with Plaintiff and Class Members to provide ESA documentation products in exchange for payment. Plaintiff and Class Members reasonably relied on Support Pets' representations that purchasing Support Pets products granted pet owners permission to take their pets anywhere.

45.     Support Pets failed to disclose that Plaintiff and Class Members could not take their pets anywhere that had "no pets" policies. Support Pets failed to disclose that Official ESA products provided only a modicum of the benefits that it advertised.

46.     Support Pets, through its agents, representatives, and employees, breached duties to Plaintiff and Class Members by providing false, misleading, and/or deceptive information regarding the nature of its products.

47.     Plaintiff and Class Members reasonably and justifiably relied upon Support Pets' representations. Plaintiff and Class Members purchased Support Pets' products as a result of its representations.

48.     Due to Support Pets' misrepresentations, Plaintiff and Class Members have suffered injuries and damages in an amount to be proven at trial. They seek damages, or alternatively, rescission and disgorgement.

## COUNT II
### FRAUDULENT MISREPRESENTATION
### (On behalf of Plaintiff and the Nationwide Class)

49.     Plaintiff incorporates by reference paragraphs 1-40 as though fully set forth at length herein.

50.     Support Pets advertised to Plaintiff and Class Members that its products made it easier to bring their pets anywhere. Support Pets advertised that its ESA products granted pet owners special permission to take their pets anywhere. Support Pets knew its products could not provide the permissions that it represented it could provide.

51.     Plaintiff and Class Members relied on these representations.

52.     Support Pets contracted with Plaintiff and Class Members to provide ESA documentation products in exchange for payment. Plaintiff and Class Members reasonably relied on Support Pets' representations that purchasing Support Pets products granted pet owners permission to take their pets anywhere.

53.     Support Pets failed to disclose that Plaintiff and Class Members could not take their pets anywhere that had "no pets" policies. Support Pets failed to disclose that Official ESA products provided only a modicum of the benefits that it advertised.

54.     Defendant breached its duties to Plaintiff and Class Members by providing false, misleading, and/or deceptive information regarding the nature of its products.

55.     Plaintiff and Class Members reasonably and justifiably relied upon Support Pets' representations. Plaintiff and Class Members purchased Support Pets' products as a result of its representations.

56.     Due to Support Pets' misrepresentations, Plaintiff and Class Members have suffered injuries and damages in an amount to be proven at trial. They seek damages, or alternatively, rescission and disgorgement.

### COUNT III
### BREACH OF EXPRESS WARRANTY
**(On behalf of Plaintiff and the Nationwide Class)**

57.     Plaintiff incorporates by reference paragraphs 1-40 as though fully set forth at length herein.

58.     Support Pets expressly warranted to Plaintiff and Class Members that its products made it easier to bring their pets anywhere.

12

59.     Support Pets warranted that its ESA products granted pet owners special permission to take their pets anywhere.

60.     Support Pets knew its products could not provide the permissions that it represented it could provide.

61.     Support Pets breached its express warranty with respect to the permissions that its products could provide.

62.     These warranties formed the basis of the bargain that was reached when Plaintiff and other Class Members purchased products from Defendant through Support Pets.

63.     Plaintiff and Class Members did not receive the products that Defendant promised them.

64.     As a result of Support Pets' actions, Plaintiff and Class Members have suffered economic damages including, but not limited to, diminished value, loss in the value of the products they purchased, and other related damages.

65.     Plaintiff and Class Members suffered economic injury and demand damages, prejudgment interest, and costs.

**COUNT IV**
**Violation of the California Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq*.**
**(On behalf of Plaintiff and the Nationwide Class or,**
**alternatively, the California Subclass)**

66.     Plaintiff incorporates by reference paragraphs 1-40 as though fully set forth at length herein.

67.     Plaintiff is a "consumer" within the meaning of California Civil Code section 1761(d) because she purchased Defendant's products for personal, family, or household purposes.

68.     Defendant is a "person" within the meaning of California Civil Code section 1761(c).

69.     Defendant's Support Pets products, including Defendant's purported Official ESA® documentation, identification cards, certificates, evaluations, and related services, constitute "goods" and "services" within the meaning of California Civil Code section 1761.

70.     Defendant represented that its products conferred legal rights, benefits, permissions, and accommodations that they did not, including by representing that consumers could lawfully keep or bring their pets into locations otherwise subject to "no pets" policies by purchasing Defendant's products.

71.     Defendant further represented that its Official ESA® products possessed characteristics, uses, benefits, and qualities that they did not possess, including by representing that the products were official, legally recognized documentation that would enable consumers to obtain housing and other accommodations unavailable to ordinary pet owners.

72.     Defendant knew, or should have known, that these representations were false or misleading because Defendant knew its products could not independently confer legal rights or exemptions under federal, state, or local law.

73.     Defendant violated, among other provisions, California Civil Code section 1770(a), including but not limited to subdivisions:

a.   § 1770(a)(5) by representing that its goods and services had characteristics, uses, benefits, and qualities that they did not have;

b.   § 1770(a)(7) by representing that its goods and services were of a particular standard or quality when they were not;

c.   § 1770(a)(9) by advertising goods and services with intent not to sell them as advertised;

14

d. § 1770(a)(14) by representing that transactions conferred rights, remedies, or obligations that they did not have; and

e. § 1770(a)(16) by representing that the subject of the transaction had been supplied in accordance with previous representations when it had not.

74. Defendant intended that consumers, including Plaintiff and members of the California Subclass rely upon these representations in purchasing its products.

75. Plaintiff reviewed and reasonably relied upon Defendant's representations and omissions in deciding to purchase Defendant's products.

76. Plaintiff would not have purchased Defendant's products, or would have paid substantially less for them, had Defendant disclosed the true nature of the products.

77. As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff and members of the California Subclass suffered injury in fact and lost money or property.

78. Pursuant to California Civil Code section 1782(a), Plaintiff notified Defendant in writing by certified mail of the particular violations of California Civil Code section 1770 alleged herein and demanded that Defendant correct, repair, replace, or otherwise rectify the unlawful, deceptive, and misleading practices described in this Complaint and provide appropriate relief to affected consumers.

79. Plaintiff does not presently seek damages under the CLRA. If Defendant fails to provide an appropriate response or otherwise rectify the violations within thirty (30) days after receipt of Plaintiff's notice, Plaintiff will amend this Complaint, as permitted by California Civil Code section 1782(d), to seek actual damages, punitive damages where authorized, attorneys' fees, costs, and any other relief available under the CLRA.

80.     Pursuant to California Civil Code section 1782(d), Plaintiff seeks an order enjoining Defendant from continuing the unlawful, unfair, deceptive, and misleading acts and practices alleged herein, requiring Defendant to cease disseminating false or misleading representations regarding its purported Official ESA® products, and awarding such other equitable relief as the Court deems appropriate.

**COUNT V**
**Violation of the California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500,** *et seq.*
**(On behalf of Plaintiff and the Nationwide Class or,**
**alternatively, the California Subclass)**

81.     Plaintiff incorporates by reference paragraphs 1-40 as though fully set forth at length herein.

82.     California's False Advertising Law ("FAL") prohibits any person or entity from making or disseminating any statement concerning real or personal property or services that is untrue or misleading and that is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

83.     Defendant affirmatively represented that its products provided consumers with official documentation and legal permissions that would enable them to keep their pets in housing with "no pets" policies, bring their pets into stores, restaurants, hotels, rideshares, and other establishments, and otherwise obtain accommodations unavailable to ordinary pet owners.

84.     Defendant further represented that consumers could obtain "Official ESA®" documentation through Defendant's services and that such documentation would provide meaningful legal rights, protections, and accommodations for their pets.

85.     These representations were material because the purported legal rights, permissions, and accommodations constituted the principal reason consumers purchased Defendant's products.

Plaintiff and members of the California Subclass paid substantial sums specifically to obtain those advertised benefits.

86. Defendant knew, or in the exercise of reasonable care should have known, that its products and documentation did not independently confer the legal rights, permissions, exemptions, or accommodations represented in its advertising and marketing materials.

87. Despite that knowledge, Defendant failed to disclose that its products could not create legal rights beyond those already provided by applicable law and that many businesses, landlords, airlines, and other entities were under no legal obligation to recognize Defendant's purported Official ESA® documentation.

88. Reasonable consumers would attach importance to these omitted facts in deciding whether to purchase Defendant's products and how much to pay for them. Had Plaintiff and members of the California Subclass known the truth, they would have paid substantially less for Defendant's products or would not have purchased them at all.

89. Defendant's advertising was likely to deceive, and did deceive, reasonable consumers.

90. As a direct and proximate result of Defendant's violations of the FAL, Plaintiff and members of the California Subclass suffered injury in fact and lost money and property, including but not limited to the purchase price paid for Defendant's products, overpayment, loss of the benefit of the bargain, and other economic damages.

91. Plaintiff therefore seeks restitution, injunctive relief, declaratory relief, attorneys' fees and costs where authorized by law, and such other relief as the Court deems just and proper.

**COUNT VI**
**Violation of the California's Unfair Competition Law ("UCL"),**
**Cal. Civ. Code §§ 17200, *et seq.***
**(On behalf of Plaintiff and the Nationwide Class or,**
**alternatively, the California Subclass)**

92.     Plaintiff incorporates by reference paragraphs 1-40 as though fully set forth at length herein.

93.     Defendant is a "person" within the meaning of California Business and Professions Code section 17201.

94.     California's Unfair Competition Law ("UCL"), California Business and Professions Code sections 17200 *et seq.*, prohibits any unlawful, unfair, or fraudulent business act or practice. Defendant violated each of these prongs through the conduct alleged herein.

95.     Defendant's acts, omissions, and conduct constitute "business acts" and "business practices" within the meaning of the UCL.

**Unlawful Prong**

96.     Defendant engaged in unlawful business practices by violating, among other laws: California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; the common law of fraudulent and negligent misrepresentation; and the common law and statutory law governing express warranties.

**Fraudulent Prong**

97.     Defendant violated the fraudulent prong of the UCL by marketing and selling its purported Official ESA® products as providing legal rights, official status, permissions, and accommodations that they did not provide, while omitting material facts regarding the limited legal effect of Defendant's documentation.

98.     Defendant's representations and omissions were likely to deceive, and did deceive, reasonable consumers. Plaintiff and members of the California Subclass reasonably relied upon Defendant's marketing and omissions and were thereby induced to purchase Defendant's products and pay prices they otherwise would not have paid.

**Unfair Prong**

99.     Defendant's conduct violates the unfair prong of the UCL because it is substantially injurious to consumers, offends established public policy, and is immoral, unethical, oppressive, unscrupulous, and substantially harmful. Defendant profited by marketing products as conferring official legal rights and accommodations that they could not provide while withholding material information necessary for consumers to make informed purchasing decisions.

100.    Defendant engaged in this conduct despite having reasonable alternatives available, including accurately disclosing the legal limitations of its products and refraining from marketing them as conferring official legal rights or permissions.

101.    As a direct and proximate result of Defendant's violations of the UCL, Plaintiff and members of the California Subclass suffered injury in fact and lost money or property, including the amounts paid for Defendant's products.

102.    Monetary damages alone are inadequate to prevent Defendant's continuing deceptive practices. Plaintiff therefore seeks restitution, injunctive relief, and all other equitable relief authorized by California Business and Professions Code sections 17203 and 17204.

### COUNT VII
### UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Nationwide Class)

103.    Plaintiff incorporates by reference paragraphs 1-40 as though fully set forth at length herein.

104.    This claim is pleaded in the alternative to any current or future warranty claims.

19

105.     As the intended and expected result of its conscious wrongdoing, Support Pets profited and benefited from misrepresenting its products to Plaintiff and Class Members.

106.     Support Pets has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Support Pets' misconduct alleged herein, Plaintiff and the Class were not receiving the products that they were promised. Specifically, Plaintiff and the Class Members expected that when they purchased products from Support Pets, they would receive products and accompanying documentation that made it easier to bring their pets anywhere. Plaintiffs expected that Support Pets' ESA products granted pet owners special permission to take their pets anywhere.

107.     Support Pets has been unjustly enriched by its fraudulent, deceptive, unlawful, and unfair conduct, and withholding of benefits and unearned monies from Plaintiff and the Class, at the expense of these parties, including but not limited to the monies paid for ESA documentation products.

108.     Equity and good conscience prohibit Support Pets from retaining these profits and benefits under the circumstances.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby requests that this Court enter an Order against Support Pets providing the following:

A.     Certification of the proposed Class(es), appointment of Plaintiff and Plaintiff's counsel to represent the proposed Class, and notice to the proposed Class to be paid by Support Pets;

B.     Temporarily and permanently enjoining Support Pets from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this complaint;

C.       Costs, restitution, damages, including punitive damages, penalties, and disgorgement in an amount to be determined at trial;

D.       An Order requiring Support Pets to pay both pre- and post-judgment interest on any amounts awarded;

E.       An award of costs and attorneys' fees; and

F.       Such other or further relief as may be appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims so triable.

Dated: July 13, 2026

/s/ Mariya Weekes
Mariya Weekes (Fla. Bar 56299)
**MILBERG, PLLC**
333 SE 2nd Avenue Suite 2000
Miami, FL 33131
Tel: (786) 206-9057
Email: mweekes@milberg.com

Bradley K. King (*pro hac vice* to be submitted)
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (917) 336-0171
Email: bking@ahdootwolfson.com

*Counsel for Plaintiff and the Proposed Class*

21